[No. 8566–2–I.   Division One.   December 28, 1981.]

JAY EVERETT, *Respondent,* v. JOEL DIAMOND,
ET AL, *Respondents,* EUGENE DETROIT
CONTRACTOR, INC., *Appellant.*

*Tewell, Thorpe & Findlay* and *Matthew T. Boyle,* for appellant.

*Lee, Smart, Cook, Beal & Martin, David Martin, Thompson, Krilich, LaPorte & Buckner,* and *Dennis LaPorte,* for respondents.

DURHAM, J.—Eugene Detroit Contractor, Inc., one of the defendants in a personal injury action, appeals the trial court's entry of judgment for the plaintiff on the jury verdict and a judgment of indemnity in favor of defendants Joel Diamond and Ira Kadish, d/b/a The Gordon Apartments.

Jay Everett, a painter employed by Shoemaker Painting Company, was painting the fascia boards on the balcony of apartment 302 of The Gordon Apartments. Everett was perched on an extension ladder to paint the outside of the fascia boards. As Everett stepped over the balcony railing, the railing gave way. Everett fell to the ground, injuring his foot, back, and wrist.

At the time of the accident, the apartments were owned by Joel Diamond and Ira Kadish (Diamond/Kadish). Eugene Detroit Contractor, Inc. (Eugene Detroit), a general contractor, performed repairs at The Gordon Apartments from time to time. Jerry Carter, chief executive officer of Eugene Detroit, reported to Diamond that repairs were needed at the apartments because there was some "bad wood" and the balcony railings were not secure. Eugene Detroit agreed to perform the repairs on the apartment balconies.

Eugene Detroit's tasks included the installation of new storage sheds to replace rotted wooden planter boxes. One end of each balcony railing was attached to a wooden planter; the other end was attached to a partition separat-

ing apartment balconies. Before Everett fell, William Tadehara, a construction worker employed by Eugene Detroit, spoke to Jerry Carter about adding a second "shear ear," an L–shaped metal reinforcement, to the partition ends of all the railings. Tadehara reinforced the attachments of those railings which felt loose when shaken. Tadehara planned to reattach the partition ends of all the balcony railings with shear ears after all of the planters were replaced with storage sheds.

Eugene Detroit subcontracted with Shoemaker Painting, Everett's employer, to paint the new storage sheds and the fascia boards at the apartments. Neither Shoemaker Painting nor Jay Everett were told that the balcony railings had been loose or were to be strengthened.

Everett sued Eugene Detroit and Diamond/Kadish for damages for the injuries he sustained in the fall. The jury found in special interrogatories that Diamond/Kadish were negligent, but that their negligence was not the proximate cause of Everett's injuries. The jury also found Eugene Detroit negligent, and found that its negligence was the proximate cause of Everett's injuries.

Eugene Detroit moved for a new trial, or in the alternative, for entry of judgment notwithstanding the verdict against Diamond/Kadish, and Eugene Detroit. The court entered judgment on the jury verdict and awarded Everett $191,250, plus costs.

Appellant Eugene Detroit contends that the trial court erred by refusing to set aside the jury's verdict. According to Eugene Detroit, the jury's finding of negligence on the part of Diamond/Kadish dictated a finding that such negligence was the proximate cause of Everett's injuries. Eugene Detroit argues that the jury must have concluded that Diamond/Kadish's negligence was a cause–in–fact of Everett's injury. Therefore, the jury's finding that Diamond/Kadish's negligence was not a proximate cause of the injuries can only be sustained if Eugene Detroit's negligence was a superseding cause of the injuries. Eugene Detroit argues that its own negligence was insufficient to break the chain

of causation between Diamond/Kadish's negligence and Everett's injuries.

The test for setting aside a jury verdict is stated in *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 851, 586 P.2d 845 (1978):

> The tests for directing a verdict and for overturning a jury verdict once rendered are essentially the same. Both motions admit the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. . . . The trial court has no discretion and may grant the motion only where there is no competent evidence nor reasonable inference which would sustain a jury verdict in favor of the nonmoving party. If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.

We conclude that the trial court properly refused to set aside the jury verdict.

Although the jury found Diamond/Kadish negligent, it does not necessarily follow that Diamond/Kadish's negligence was a cause–in–fact of Everett's injury which the jury found to be superseded by Eugene Detroit's negligence. The jury was instructed as to the duties of a general contractor toward the employee of a subcontractor:

> A general contractor has a duty to keep the premises under his control reasonably safe and to warn of dangers which are not obvious to the employee of a sub–contractor but are known to or discoverable by the contractor, in the exercise of ordinary care.

Instruction No. 14. The jury could simply have concluded that Eugene Detroit's failure to warn Everett or his employer was the proximate cause of Everett's injury.

There was competent evidence to sustain the jury's finding that Eugene Detroit's negligence was the proximate cause of Everett's injuries, notwithstanding a finding of Diamond/Kadish's negligence. Jerry Carter, vice–president and construction manager for Eugene Detroit, initially brought to Diamond's attention the need for repairs on the balconies. Eugene Detroit planned to reinforce all of the

balcony railings after installation of the storage sheds, but did not tell Everett or his employer of potential dangers. A jury could have reasonably concluded that Eugene Detroit's failure to warn of a danger of which it had knowledge was the proximate cause of Everett's injuries, notwithstanding Diamond/Kadish's failure to exercise ordinary care. Because there was competent evidence to sustain the jury's verdict, the trial court properly refused to set it aside.

█ Eugene Detroit also argues that because proximate cause is a question of law, not of fact, the trial court erred in not setting aside the jury's finding as to proximate cause. We disagree. Proximate cause is a question for the trier of fact under usual circumstances. *Doyle v. Nor–West Pac. Co.,* 23 Wn. App. 1, 6, 594 P.2d 938 (1979). *See also Boeing Co. v. State,* 89 Wn.2d 443, 448, 572 P.2d 8 (1978). The determination of proximate cause was properly left to the jury in this case.

Eugene Detroit next assigns error to the trial court's refusal to grant a new trial, claiming a witness for plaintiff Everett was allowed to testify to a matter of law. Edward R. Lucero, a retired safety inspector for the State of Washington Department of Labor and Industries, testified that he was familiar with the department's safety codes governing construction site activities. Lucero stated that the work undertaken by Eugene Detroit and Shoemaker Painting was subject to the "safe place standards" adopted by the Department of Labor and Industries. Lucero also testified to the duties of Eugene Detroit towards employees of its subcontractor under the department's "safe place standards". According to Lucero, Eugene Detroit violated those standards by failing to maintain a safe place of employment. Finally, Lucero testified that Diamond/Kadish also violated the "safe place standards".

█ The Rules of Evidence do not preclude a witness from testifying to a matter of law. However, the comments to ER 704 indicate that a witness may not make a conclusion of law. Comment, ER 704, 91 Wn.2d 1159 (1979). *See*

*also* Note, Fed. R. Evid. 704. The comments to ER 704 are in accord with Washington law before the 1979 adoption of the Rules of Evidence:

> It is the established and unquestioned rule that it is in the province of the court, and not the jury, to interpret a statute or ordinance and to determine whether it applies to the conduct of a party. . . . It is accordingly the general rule that a witness is not permitted to give his opinion on a question of domestic law or upon matters which involve questions of law. . . . As was said in *State v. Ballard,* 394 S.W.2d 336 (Mo. 1965), one of the cornerstones of our system of jurisprudence is that questions of fact are to be determined by a jury, and that all matters of law are to be determined and declared by the court.

*Ball v. Smith,* 87 Wn.2d 717, 722–23, 556 P.2d 936 (1976).

Lucero's testimony did include conclusions of law. He first testified that the "safe place standards" adopted by the Department of Labor and Industries applied to Eugene Detroit's construction work at The Gordon Apartments. Lucero also testified that Eugene Detroit violated those standards by failing to maintain a safe place of employment.

■ Nonetheless, the error claimed by Eugene Detroit is harmless. Eugene Detroit does not explain why Lucero's testimony was prejudicial. Lucero's enunciation of the law does not appear to be the key to the jury's liability on the part of Eugene Detroit. Lucero testified that Diamond/Kadish, as well as Eugene Detroit, violated the "safe place standards" by failing to maintain a safe place of employment. The jury's finding that Eugene Detroit was liable and that Diamond/Kadish was not liable indicates that it was not unduly swayed by Lucero's testimony. In addition, the record indicates that aside from Lucero's testimony, there was substantial evidence from which the jury could conclude that Eugene Detroit's negligence was the proximate cause of Everett's injuries. The most persuasive evidence of liability on the part of Eugene Detroit was testimony indicating that Eugene Detroit knew that the balcony railings were insecure and failed to so inform Shoemaker Painting

or Jay Everett. Any error that may have occurred does not require reversal.

Finally, Eugene Detroit appeals the trial court's judgment of indemnity. Diamond/Kadish filed a third party complaint for indemnity against Eugene Detroit. Defendants Diamond/Kadish and Eugene Detroit agreed to bifurcate the trial and try the issue of indemnity separately to the court. The court entered a judgment in favor of Diamond/Kadish in the amount of $8,450 for costs and attorney's fees.

Eugene Detroit contends that Diamond/Kadish were not entitled to indemnification for attorney's fees and costs under the test set forth in *Manning v. Loidhamer,* 13 Wn. App. 766, 769, 538 P.2d 136 (1975):

> Three elements are necessary to create liability: (1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event, *viz.,* the wrongful act or omission of A toward B. The Washington decisions discussing this rule do not clearly state that the original act or omission of A must be against B, but such is clearly implied. All of the Washington cases allowing expenses of litigation to be recovered as consequential damages involve a breach of duty by A which exposed B to litigation with C, a third person who was a stranger to the event involving A and B.

Accordingly, Diamond/Kadish are entitled to indemnity if (1) there was a wrongful act or omission by Eugene Detroit toward Diamond/Kadish; (2) as a result of that act or omission, Diamond/Kadish were involved in litigation with Everett; and (3) Everett was not connected with the wrongful act or omission of Eugene Detroit toward Diamond/Kadish.

The court found that Eugene Detroit was actively negligent and breached its duty to Diamond/Kadish by failing to warn the subcontractor working on Diamond/Kadish's property of the dangerous balcony railings. As a result of Eugene Detroit's failure to warn of potential danger, Dia-

mond/Kadish were exposed to litigation with Everett. Everett was not a party to Eugene Detroit's wrongful act. All three requirements for indemnification for litigation expenses were met. The trial court properly entered a judgment of indemnity in favor of Diamond/Kadish.

The judgment is affirmed.

JAMES, C.J., and CALLOW, J., concur.

Reconsideration denied February 23, 1982.