# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of<br><br>CURTIS E. CARLSON.<br><br>DONA SEELY, D.D.S.,<br><br>Petitioner,<br><br>v.<br><br>DAVID WANDS, D.D.S., personal representative of the estate of Curtis E. Carlson<br><br>Respondent. | No. 78970-8-I<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: October 14, 2019 |

PER CURIAM — Seely seeks discretionary review of the trial court's order denying her motion for partial summary judgment with regard to the characterization and ownership of two condominiums. Review is denied because Seely fails to establish any of the criteria for review under RAP 2.3(b).

## FACTS

Dr. Dona Seely and Dr. Curtis Carlson married on February 14, 1982. Seely is an orthodontist, and Carlson was an orthodontist and a periodontist before his death. They maintained separate practices, but shared a floor of an office building they owned together.

In 1991, Seely and Carlson prepared estate planning documents, including a property agreement (1991 Agreement). The 1991 Agreement provided that "all

of the property either or both of them now owns or hereafter acquires during their marriage is their community property."

On July 5, 2007, Christopher Medina and Janie Ng executed a statutory warranty deed conveying a condominium on Lenora Street in Seattle (Lenora Condo) to "Dona Seely, A Married Woman As her separate estate." (Boldface omitted.) The following day, Carlson executed a quitclaim deed conveying any interest in the Lenora Condo "to Dona Seely, A Married Woman As her separate estate." (Boldface omitted.) Carlson also executed an excise tax affidavit in conjunction with the quitclaim deed, certifying that the purpose of the transfer was "To Establish Separate Property."

On September 13, 2009, the Dona M. Seely DDS, MSD, P.S. Retirement Trust (Trust) signed a purchase agreement for a condominium on Blanchard Street in Seattle (Enso Condo). The Trust holds legal title to assets of an ERISA[1] qualified employee retirement plan established in 2007 for employees of Seely's practice. On December 15, 2009, the property developer executed a statutory warranty deed conveying the Enso Condo to Seely as Trustee of the Trust.

In February 2012, Seely and Carlson created a new property agreement (2012 Agreement). The 2012 Agreement, which explicitly supersedes the 1991 Agreement, lists several items declared to be Seely's "separate property," including the Lenora Condo.

---

[1] Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1453.

The record also includes a third document, dated August 10, 2013, addressing the characterization of the parties' property (2013 Agreement). The 2013 Agreement comprises five unnumbered, typewritten lists titled as follows: (1) "Community Property of Dr. Curtis E. Carlson & Dr. Dona Seely"; (2) "Assets of Dr. Dona Seely"; (3) "Liabilities of Dr. Dona Seely"; (4) "Assets of Dr. Curtis E. Carlson"; and (5) "Dr. Carlson's Liabilities." The page headed "Assets of Dr. Dona Seely" includes the Lenora Condo and the Enso Condo.

Dr. Carlson passed away on March 19, 2014. Sometime after Dr. Carlson's death, Dr. Seely was cleaning the home when she found a folder behind a desk in the home office the couple shared. Inside the folder was a draft petition for dissolution.[2] Though the petition was not signed, Seely recognized Carlson's handwriting and initials on the document. Under the section marked "Property," the draft petition provides,

> The petitioner's recommendation for the division of property is set forth below.
>
> Each party should be awarded his/her separate property.
> The wife's separate property consists of the following: Her professional dental corporation including one-half of the orthodontic equipment and supplies in the office, the Burien office building, located at 15507 Second Avenue S.W., Burien, WA 98166; her condominiums (2) located at 900 Lenora Street #1007, Seattle, WA 98166 and 820 Blanchard # 1507, Seattle, WA 98121, her ING retirement funds, and the yacht "Conundrum" and the Ski Nautique/Correct Craft boat, and the art work she paid for and the furniture she purchased.
> The husband's separate property consists of: his retirement funds, and his professional dental corporation, including all of the

---

[2] This is a different petition than the one actually filed by Dr. Carlson on January 27, 2014.

periodontal equipment and supplies and one-half of the orthodontic equipment and supplies.

The community property, consists of: the parties' home located at 16730 Shore Drive N.E., Seattle, WA 98155, and the furnishings therein (except art work or furnishings purchased by the wife); and the Bellevue office building, located at 12148 112th St. N.E., Bellevue, Washington.

(Emphasis added.)

Carlson's will was admitted to probate. The personal representative for Carlson's estate (Estate) sued to remove Seely as administrator for the parties' community property. A superior court commissioner certified for trial various disputes related to the characterization of the parties' property, including the Lenora Condo and the Enso Condo. In the order, Seely stipulated she would not sell or otherwise dispose of the property until the resolution of the disputes regarding the characterization of the property.

On June 27, 2018, Seely moved for partial summary judgment, seeking a determination that the Estate had no ownership interest in the Lenora Condo or the Enso Condo.

In its response, the Estate argued that both condominiums were community property because they were purchased during the marriage using community funds. The Estate also disputed the authenticity and enforceability of both the 2012 Agreement and the 2013 Agreement, noting that Carlson's signature was not notarized on the 2012 Agreement and the 2013 Agreement did not contain any language purporting to transfer or convey the condominiums to Seely as separate property.

4

The Estate also submitted the declaration of Devitt Barnett, an attorney specializing in matters pertaining to federal taxes and the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1453. Barnett opined that the Trust's purchase of the Enso Condo was prohibited under ERISA and the Trust would be required to unwind the transaction or suffer onerous tax penalties.

In reply, Seely moved to strike Barnett's declaration, arguing that his "speculative testimony fails to identify the facts and/or data upon which his opinion is based, as required, and provides inaccurate and misleading legal conclusions." Seely also argued that "conclusions of law should be left for the court and evidence offered to prove the law is inadmissible and improper."

The trial court denied summary judgment. The court made findings of fact as follows:

> 1) Because the condominiums which are the subject of this motion were purchased during the marriage of Curtis Carlson and Dona Seely, there is a presumption that the condos are community property.
>
> 2) Because community funds were used in whole or in part to purchase the two condos, there is a presumption of community property.
>
> 3) Because the condominiums were acquired after Dr. Carlson and Dr. Seely executed the 1991 property agreement that all after-acquired property would be community property, the 1991 agreement creates a presumption that the condominiums are community property.
>
> 5) Material issues of fact preclude finding as a matter of law on summary judgment that Dr. Seely has rebutted the presumption that the condominiums that were the subject of the motion were community property.

5

6) Consequently the Motion for Partial Summary Judgment Regarding Condos is DENIED.

The trial court denied Seely's motion for reconsideration. Seely seeks discretionary review.

## DISCUSSION

"An order denying summary judgment is interlocutory in nature and 'not a final judgment for the claim still remains pending trial. The issue can be reviewed after trial in an appeal from final judgment.'" DGHI, Enters. v. Pac. Cities, Inc., 137 Wn.2d 933, 949, 977 P.2d 1231 (1999) (quoting Rodin v. O'Beirn, 3 Wn. App. 327, 332, 474 P.2d 903 (1970)). Washington strongly disfavors interlocutory review, and it is available only "in those rare instances where the alleged error is reasonably certain and its impact on the trial manifest." Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591 (2010). "'Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business.'" Id. (quoting Maybury v. City of Seattle, 53 Wn.2d 716, 721, 336 P.2d 878(1959)).

This court grants discretionary review only on the four narrow grounds set forth in RAP 2.3(b):

> (1) The superior court has committed an obvious error which would render further proceedings useless;
>
> (2) The superior court has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act;
>
> (3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court; or

(4) The superior court has certified, or all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

RAP 2.3(b).

Seely first argues that the trial court erred in applying the community property presumption to the Lenora Condo and the Enso Condo. She argues that Carlson never had an ownership interest in the Enso Condo and explicitly disclaimed any interest in the Lenora Condo. Seely contends she is entitled to review pursuant to RAP 2.3(b)(1), (2), and (3).

Summary judgment is appropriate only if "'there is no genuine issue as to any material fact' and 'the moving party is entitled to a judgment as a matter of law.'" Walston v. Boeing Co., 181 Wn.2d 391, 395, 334 P.3d 519 (2014) (quoting CR 56(c)). "The appellate court engages in the same inquiry as the trial court, with questions of law reviewed de novo and the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party." Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). "The moving party bears the burden of showing that there is no genuine issue of material fact. If this burden is satisfied, the nonmoving party must present evidence demonstrating material fact. Summary judgment is appropriate if the nonmoving party fails to do so." Walston, 181 Wn.2d at 395-96 (citations omitted). "A genuine issue is one upon which reasonable people may disagree; a material fact is one controlling the litigation's outcome." Youker v. Douglas County, 178 Wn. App. 793, 796, 327 P.3d 1234 (2014). This court reviews the superior court's

7

denial of a motion for reconsideration for abuse of discretion. See Martini v. Post, 178 Wn. App. 153, 161, 313 P.3d 473 (2013).

Here, Seely has not shown an error warranting review under RAP 2.3(b)(1). "The text of subsection (b)(1) provides that discretionary review is proper when the error committed is so blatant and severe that there is no point to continuing the particular litigation, either because further proceedings would require reversal and repetition on remand, or because the litigation should be dismissed altogether." Stephen J. Dwyer, Leonard J. Feldman, & Hunter Ferguson, The Confusing Standards for Discretionary Review in Washington and a Proposed Framework for Clarity, 38 SEATTLE U. L. REV. 91, 102 (2014). It was not obvious error for the trial court to determine there were genuine issues of material fact that the condominiums were community property. A party may rebut the community property presumption by offering clear and convincing evidence that the property was acquired with separate funds. In re Marriage of Chumbley, 150 Wn.2d 1, 5, 74 P.3d 129 (2003). The Estate presented evidence raising a genuine issue of material fact that the condominiums were purchased with community funds. It submitted a portion of Seely's deposition testimony in which she stated that the source of the money she used to purchase the two condominiums was a home equity line of credit borrowed against the equity in the community property primary residence owned with Carlson. And, the court previously granted the Estate's motion for partial summary judgment finding that Seely's professional earnings during the marriage were community property.

8

Furthermore, it was not obvious error for the court to conclude that there were genuine issues of material fact as to the parties' intentions regarding the property. Spouses may change the status of their community property to separate property by entering into mutual agreements. In re Marriage of Mueller, 140 Wn. App. 498, 504, 167 P.3d 568 (2007). But, a spouse seeking to enforce such an agreement must establish with clear and convincing evidence both (1) the existence of the agreement and (2) that the parties mutually observed the terms of the agreement throughout their marriage. Id. Here, the Estate raised challenges to both the 2012 and 2013 Agreements, which purported to establish the condominiums as Seely's separate property. The Estate noted that there were multiple versions of the 2012 Agreement in the record, only some of which contained Carlson's signature, and no copies of the 2012 Agreement that contained his notarized signature. And the Estate noted that the 2013 Agreement listed only the assets and liabilities of each party, but did not purport to convey or gift the condominiums to Seely.

Nor does Seely demonstrate error warranting review under RAP 2.3(b)(2). RAP 2.3(b)(2) "applies to orders that immediately change the rights of a party or modify some existing condition." Dwyer et al., 38 SEATTLE U. L. REV. at 102. Seely contends that "since an order prevents [her] from selling or transferring her real property, the trial court's decision limits [her] fundamental freedom to act with respect to that real property." While such an order might arguably limit her freedom to act, it was not imposed here. Instead, it was previously imposed by a superior court commissioner on December 18, 2017, a decision which Seely has not

9

challenged. Moreover, for the reasons discussed above, the trial court's conclusion that there were genuine issues of material fact for trial was not probable error.

Finally, Seely fails to show she is entitled to review pursuant to RAP 2.3(b)(3). To do so, she must show that the trial court fundamentally departed from "the accepted and usual course of judicial proceedings" in denying her motion for partial summary judgment. Id. But, in determining that the Estate had raised a genuine issue of material fact for trial, the trial court did not depart from the procedure outlined in CR 56(c). Though Seely may disagree with the outcome, she does not establish that "reasonable minds could reach but one conclusion on the evidence." See, e.g., Smith v. Safeco Ins. Co, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003) ("Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." Review is not warranted under RAP 2.3(b)(3).

Seely additionally argues the trial court erred in considering the Barnett declaration. She argues that its failure to strike the declaration constituted a departure from the accepted and usual court of judicial proceedings pursuant to RAP 2.3(b)(3).

Seely first contends that Barnett "has never been disclosed as a witness in discovery or witness disclosure." But this claim is contradicted by the record. The Estate submitted a list of witnesses for trial that includes Barnett's name, contact information and qualifications as well as the substance of his anticipated testimony.

Seely argues that, because Barnett identified as a "legal expert," the declaration should have been excluded from consideration because "it is well established that expert witnesses on the law are generally not allowed, except in legal malpractice cases, as they invade the province of the judge." Under ER 704, a witness may testify as to matters of law, but may not give legal conclusions. Everett v. Diamond, 30 Wn. App. 787, 791, 638 P.2d 605 (1981). A declaration is to be disregarded to the extent that it contains legal conclusions. Charlton v. Day Island Marina, Inc., 46 Wn. App. 784, 788, 732 P.2d 1008 (1987) (citing Orion Corp. v. State, 103 Wn.2d 441, 461-62, 693 P.2d 1369 (1985)).

Seely does not include the transcript of the summary judgment hearing. The trial court's order on summary judgment lists the Barnett declaration as one of the documents considered by the court. But it is unclear whether the trial court ruled on Seely's motion to strike and, if so, on what grounds. In any event, regardless of whether the trial court erred in considered the declaration, any error is harmless because this court performs a de novo review of a trial court's summary judgment order. Seely fails to establish error warranting discretionary review. The motion for discretionary review is denied.

FOR THE COURT:

11