[No. 14734-0-I.  Division One.  July 23, 1986.]

JOHN L. PARRISH, *Appellant,* v. DARLENE JONES, *as Personal Representative, Respondent.*

450

*Santiago Juarez,* for appellant.

*Michael Hunsinger* and *Neubauer & Hunsinger,* for respondent.

RINGOLD, A.C.J.—John Parrish sued Darlene Jones, the personal representative of his wife's estate, for a share of the settlement proceeds from a wrongful death and survival action. The trial court concluded that Parrish had not suffered any pecuniary loss from his wife's death and granted Jones summary judgment. Parrish appeals, arguing that the trial court erred by using a standard of pecuniary loss to apportion all of the settlement proceeds and that material issues of fact exist. We conclude that there are genuine and material issues of fact which must be decided by a trier of the fact and reverse.

Pamela Jones and John Parrish married on November 7, 1975. In December 1980, Pamela discovered that she had cancer. John and Pamela separated in March 1981, and she petitioned for a dissolution of the marriage on May 1, 1981. Pamela was awarded temporary custody of their only child, Coco Amanda Parrish. John was obligated to pay child support. The proceedings never culminated in a decree of dissolution. In October 1981, Pamela and John reached an agreement whereby Pamela gave John a quitclaim deed for her interest in some business property, and John gave Pamela a quitclaim deed for his interest in the Roxbury family home.

Pamela underwent several operations and radiation treatments, none of which stopped the spread of the cancer. On April 8, 1982, Pamela and John filed a medical malpractice action against Bruce L. Donaldson, M.D., and the Puget Sound Institute of Pathology, Inc. Pamela and John alleged that Dr. Donaldson failed to diagnose her cancer at a time when it could have been easily treated.

On January 13, 1983, Pamela left the hospital and returned home. At about the same time, John moved in with her. Shortly afterward, on February 4, 1983, Pamela died.

The medical malpractice action was amended to become a wrongful death and survival action. Subsequently John was dismissed from the case by an order of voluntary dismissal. John states that he was never informed by counsel

for Pamela's estate of the import of this dismissal. The survival and wrongful death action was settled with an agreement to pay Coco $714,000 in installments extending over her lifetime.

John brought this action for an apportionment of the settlement. The trial court dismissed the suit by summary judgment and this appeal followed.

### APPORTIONMENT OF AWARD IN WRONGFUL DEATH AND SURVIVAL ACTIONS

Both parties seem to agree that apportionment of a wrongful death settlement should be based on the respective pecuniary loss of each party. John argues that the trial court erred by narrowly construing the term "pecuniary loss."

The settlement proceeds which are the subject of this suit are the product of a settlement of three separate causes of action. The first was an action for wrongful death based on RCW 4.20.010[1] and former RCW 4.20.020.[2] The other two actions were survival actions; one based on RCW 4.20.046[3] and the other based on former RCW 4.20.060.[4]

---

[1]RCW 4.20.010 provides: "When the death of a person is caused by the wrongful act, neglect or default of another his personal representative may maintain an action for damages against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony."

[2]Former RCW 4.20.020 provided: "Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death.

"In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just."

RCW 4.20.020 was amended by Laws of 1985, ch. 139, § 1, to include stepchildren as beneficiaries.

[3]RCW 4.20.046 provides:

"(1) All causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or

Each of these statutes allow for different damages and beneficiaries.

■ Under RCW 4.20.010 or .020, the wrongful death statutes, the measure of damages is the actual pecuniary loss suffered by the surviving beneficiaries from the death of a relative. *Jensen v. Culbert,* 134 Wash. 599, 605, 236 P. 101 (1925). In addition to monetary contributions lost, "pecuniary loss" includes the loss of other services. *Pearson v. Picht,* 184 Wash. 607, 613, 52 P.2d 314 (1935). Our Supreme Court has held that a husband's loss of "love, affection, care, companionship, society, and consortium" from the death of his wife is compensable. *Myers v. Harter,* 76 Wn.2d 772, 783, 459 P.2d 25 (1969).

---

otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section: *Provided, however,* That no personal representative shall be entitled to recover damages for pain and suffering, anxiety, emotional distress, or humiliation personal to and suffered by a deceased. The liability of property of a husband and wife held by them as community property to execution in satisfaction of a claim enforceable against such property so held shall not be affected by the death of either or both spouses; and a cause of action shall remain an asset as though both claiming spouses continued to live despite the death of either or both claiming spouses.

"(2) Where death or an injury to person or property, resulting from a wrongful act, neglect or default, occurs simultaneously with or after the death of a person who would have been liable therefor if his death had not occurred simultaneously with such death or injury or had not intervened between the wrongful act, neglect or default and the resulting death or injury, an action to recover damages for such death or injury may be maintained against the personal representative of such person."

[4]Former RCW 4.20.060 provided: "No action for a personal injury to any person occasioning death shall abate, nor shall such right of action determine, by reason of such death, if such person has a surviving spouse or child living, or leaving no surviving spouse or issue, if there is dependent upon the deceased for support and resident within the United States at the time of decedent's death, parents, sisters or brothers; but such action may be prosecuted, or commenced and prosecuted, by the executor or administrator of the deceased, in favor of such surviving spouse, or in favor of the surviving spouse and children, or if no surviving spouse, in favor of such child or children, or if no surviving spouse or child or children, then in favor of the decedent's parents, sisters or brothers who may be dependent upon such person for support, and resident in the United States at the time of decedent's death."

RCW 4.20.060 was amended by Laws of 1985, ch. 139, § 2, to include stepchildren as beneficiaries.

454

In *Schultz v. Western Farm Tractor Co.,* 111 Wash. 351, 352, 190 P. 1007, 14 A.L.R. 514 (1920), the Supreme Court stated:

> The statute which gives a right of action for wrongful death (Laws of 1917, p. 495) [codified as RCW 4.20.010 and .020], while providing that such an action may be maintained by the personal representative of the person whose death is wrongfully caused, for the benefit of certain designated relatives of such person, does not in terms prescribe any rule by which the fund is to be apportioned.

The court then suggested that the Legislature possibly intended that a settlement fund be apportioned equally among the beneficiaries.[5] *Schultz,* at 352. The court concluded, however, that a distribution based on injury to each beneficiary was not error. *Schultz,* at 353.

In Alaska, as in Washington, damages in a wrongful death suit are based on the beneficiaries' actual losses. *Horsford v. Estate of Horsford,* 561 P.2d 722 (Alaska 1977). When presented with the issue here, the Alaska Supreme Court reasoned it would be illogical to distribute the damages so awarded in any manner other than an apportionment based on the actual loss of each beneficiary. *Horsford,* at 726–27. This reasoning is persuasive. The rule for apportionment of damages in wrongful death cases in Washington should be the same.

No apportionment of the settlement fund was made between the wrongful death and the survival causes of action; therefore, we must also analyze the proper method to apportion proceeds from the settlement of actions based on the survival statutes, RCW 4.20.046 and .060.

Unlike the wrongful death statutes, which allow a claim for damages suffered by the statutory beneficiary, the survival statutes continue the cause of action of the decedent

---

[5]In *Schultz v. Western Farm Tractor Co.,* 111 Wash. 351, 352, 190 P. 1007, 14 A.L.R. 514 (1920) the Supreme Court declined to decide whether an equal apportionment of a settlement fund would be error, because the appellant, who wanted a larger share, had received more than one–half of the fund and the other beneficiary had not appealed.

for the damages which the decedent could have claimed had the death not occurred. *Warner v. McCaughan,* 77 Wn.2d 178, 179, 460 P.2d 272 (1969). RCW 4.20.060 is referred to as the special survival or death by personal injury statute. *Walton v. Absher Constr. Co.,* 101 Wn.2d 238, 240, 676 P.2d 1002 (1984). RCW 4.20.046 is a general survival statute.

These two survival statutes have important distinctions. Under RCW 4.20.046, the action which survives is for the benefit of the estate and there is no recovery for pain and suffering of the decedent. Under RCW 4.20.060, the personal representative brings the action for the benefit of certain beneficiaries and damages for pain and suffering are allowed. *Walton,* at 240.

Any part of the fund allocated to the action under RCW 4.20.046 passes through the the estate and is distributed as any other asset. *See generally* Martin, *Measuring Damages in Survival Actions for Tortious Death,* 47 Wash. L. Rev. 609 (1972). Proceeds derived from the settlement of the RCW 4.20.060 action, specifically all funds relating to decedent's pain and suffering, do not go through the estate, but are distributed directly to the statutory beneficiaries. *See* 47 Wash. L. Rev. at 616.

The question remaining is how are pain and suffering damages awarded pursuant to RCW 4.20.060 distributed among the statutory beneficiaries. The estate contends that such an award should be distributed according to the decedent's will.

█ Faced with the same question when construing a similar federal statute, the Federal Employee's Liability Act, 45 U.S.C. § 59 (1972), the Supreme Court of Michigan stated: "The Federal act makes no provision for apportionment of the amount recovered, see *Tumolo v. Reading Co.,* D.C., 52 Fed. Supp. 956, [(1943)] hence, as to the funds involved in the case at bar, the State law of descent and distribution applies." *Estate of Hopps v. Chestnut,* 324 Mich. 256, 263–64, 36 N.W.2d 908, 912 (1949). This method seems as reasonable as any to apportion proceeds amongst

statutory beneficiaries.

In summation, when a trial court must apportion funds from a single settlement fund resolving claims under the three statutory causes of action presented here, the fund must first be apportioned between the three actions. After this initial separation of the settlement fund, the proceeds are then apportioned according to the appropriate method for each cause of action.

## THE SUMMARY JUDGMENT

■ John contends that the trial court erred by granting summary judgment, arguing that there are material facts in dispute. An appellate court engages in the same inquiry as the trial court in a motion for summary judgment. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). Summary judgment is proper if there are no genuine issues as to any material fact and the moving party is entitled to prevail as a matter of law. CR 56(c); *Blenheim v. Dawson & Hall, Ltd.,* 35 Wn. App. 435, 667 P.2d 125, *review denied,* 100 Wn.2d 1025 (1983). The material facts submitted and all reasonable inferences therefrom must be considered in a light most favorable to the nonmoving party. *Davis v. Niagara Mach. Co.,* 90 Wn.2d 342, 348, 581 P.2d 1344 (1978).

■■ The first question which must be answered is whether John Parrish is a statutory beneficiary and entitled to any money from the estate. If John and Pamela had separated with no intention of ever resuming the marital relationship, he should be excluded from receiving any part of the settlement fund. *See Peters v. Skalman,* 27 Wn. App. 247, 252–53, 617 P.2d 448 (involving adverse possession by one spouse of another spouse's land), *review denied,* 94 Wn.2d 1025 (1980).

In *Peters,* at 252–53, the court stated:

A defunct marriage exists where it can be determined that the spouses, by their conduct, indicate that they no longer have a will to union. Physical separation, by itself, does not negate the existence of the community. The test is whether the parties through their actions have exhibited a decision to renounce the community "with no

intention of ever resuming the marital relationship." Although previous cases in which a defunct marriage was found involved a long separation following entry of an interlocutory divorce decree or execution of a written separation agreement, we are satisfied that so long as the actions of the parties evidence an intent to renounce the marriage, no such formal action is necessary.

(Citations omitted.)

The estate claims that John is collaterally estopped from asserting that he had reconciled with Pamela. In Pamela's will, dated December 21, 1982, she left nothing to John and designated Ruby McQueen to be Coco's guardian. On January 17, 1983, John prepared a quitclaim deed which Pamela signed, reconveying the Roxbury house to John. In another lawsuit, the trial court found this deed invalid because Pamela was legally incompetent at the time she executed the deed and the deed was the product of John's undue influence. An appeal of that case was dismissed by stipulation of the parties. In the present action, John submitted an affidavit stating that he and Pamela had a complete reconciliation prior to her death, which was not motivated on his part by greed.

Jones argues that in the earlier action voiding the quitclaim deed the trial court found John and Pamela had separated 2 years before trial. The trial court found:

> Pamela and John Parrish were married in 1972. In the mid–1970's, John Parrish legally adopted Coco Parrish, who at the time of trial was thirteen years of age. John and Pamela Parrish had been legally separated for approximately two years prior to trial. In May 1981 Mrs. Parrish filed for dissolution of their marriage in King county, but those proceedings never consummated in an actual dissolution.

It is apparent that the trial court was making a chronological recitation of the facts. The sentence upon which the estate relies is "John and Pamela Parrish had been legally separated for approximately two years prior to trial." This, however, does not preclude a finding that on or about January 13, 1983, 3 weeks before her death, John Parrish

moved back into the Roxbury house with the intent on the part of both parties, Pamela and John, to reconcile and that a reconciliation resulted.

John presented an affidavit stating that he and Pamela had reconciled and intended to resume the marital relationship. This affidavit raises a question of fact for the trier of fact, and summary judgment was inappropriate. *See Blenheim v. Dawson & Hall, Ltd., supra.*

Similarly, with respect to apportionment of the proceeds allocated to the wrongful death action, there is a question of fact as to whether John suffered a pecuniary loss. Viewing the evidence in a light most favorable to John, if there was a reconciliation John sustained some pecuniary loss.

We reverse the judgment of dismissal and remand for trial.

WILLIAMS and PEKELIS, JJ., concur.