160 P.3d 1089 (2007)
Ronald LUNSFORD and Esther Lunsford, Appellants,
v.
SABERHAGEN HOLDINGS, INC., First Doe through One Hundredth Doe, Respondents.
No. 57293-8-I.
Court of Appeals of Washington, Division 1.
June 25, 2007.
*1090 Zachary B. Herschensohn, James E. Shadduck, Attorney at Law, Portland, OR, for Appellants.
Timothy Kost Thorson, Neal J. Philip, Carney Badley Smith & Spellman, Seattle, WA, for Respondents.
William Joel Rutzick, Schroeter Goldmark & Bender, Janet L. Rice, Attorney at Law, Seattle, WA, for Amicus Curiae on behalf of Goldmark & Bender Schroeter.
APPELWICK, C.J.
¶ 1 At issue is whether strict product liability retroactively applies to claims arising from injuries caused by exposure to asbestos that occurred before Washington's adoption of strict product liability. We conclude because strict product liability was retroactively applied to litigants in previous asbestos exposure cases, it retroactively applies to all subsequent litigants. It cannot be selectively prospectively applied. The trial court erred when it held as a matter of law that Saberhagen cannot be held liable to Lunsford under a strict liability theory. We reverse and remand.

FACTS
¶ 2 Ronald Lunsford suffers from mesothelioma. He and his wife, Esther Lunsford (together, Lunsford) contend that this was caused in part by respirable asbestos released from insulation supplied by the Brower Company/Saberhagen Holdings, Inc. The claims in this appeal concern only household exposure to asbestos in 1958, carried in Lunsford's father's clothing from his employment at the Texaco refinery in Anacortes, Washington.
¶ 3 In its first appearance in the court below, Saberhagen moved for summary judgment, arguing that because Lunsford himself was not a "user or consumer" of a defective product, he was not entitled to strict liability coverage. The trial court agreed and entered partial summary judgment. Lunsford appealed. On appeal, Saberhagen argued that the trial court correctly dismissed Lunsford's strict product liability claims because he failed to show that he was a "user" or "consumer" of Brower-supplied asbestos products within the meaning of Restatement (Second) of Torts § 402A. This court reversed, holding that, "policy rationales support application of strict liability to a household family member of a user of an asbestos-containing product, if it is reasonably foreseeable that household members would be exposed in this manner." Lunsford v. Saberhagen Holdings, Inc., 125 Wash.App. 784, 793, 106 P.3d 808 (2005) (Lunsford I). Whether Lunsford fit into that category was for the jury to decide  it was incorrect for the trial court to conclude as a matter of law that Saberhagen could not reasonably foresee that Lunsford would come into contact with its asbestos.
¶ 4 In that same appeal, Saberhagen, for the first time, also raised the argument that when two Washington appellate cases, Ulmer and Tabert, adopted § 402A strict product liability, it was a new rule that should not be applied retroactively under a three-part test from Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); see also Seattle-First Nat'l Bank v. Tabert, 86 Wash.2d 145, 148-50, 542 P.2d 774 (1975); Ulmer v. Ford Motor Co., 75 Wash.2d 522, 531-32, 452 P.2d 729 (1969). Because Saberhagen had not presented its retroactivity argument to the trial court below, this court declined to address that issue, leaving it to Saberhagen to raise on remand.
¶ 5 On remand, Saberhagen brought this argument before the court in its second motion for summary judgment. There, Saberhagen contended that "[b]ecause § 402A was not the law of Washington in 1958, and because there was no other applicable theory of strict liability at that time, as a matter of law Saberhagen cannot be held liable to plaintiffs *1091 under a strict liability theory." On October 21, 2005, the trial court granted Saberhagen's motion for partial summary judgment. Lunsford appeals.

ANALYSIS
I. Summary Judgment Standard
¶ 6 On review of summary judgment courts engage in the same inquiry as the trial court. Highline Sch. Dist. v. Port of Seattle, 87 Wash.2d 6, 15, 548 P.2d 1085 (1976). Summary judgment is appropriate if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Police Guild v. City of Seattle, 151 Wash.2d 823, 830, 92 P.3d 243 (2004). The moving party bears this burden of proof. Young v. Key Pharm., 112 Wash.2d 216, 225, 770 P.2d 182 (1989). Based on this standard, Saberhagen bears the burden of proof that it was entitled to judgment as a matter of law.
II. Review on Appeal
¶ 7 Saberhagen contends that Lunsford is attempting to raise the retroactivity argument, and should be precluded from doing so because he did not raise this argument below. Generally, failure to raise an issue before the trial court precludes a party from raising it on appeal. Smith v. Shannon, 100 Wash.2d 26, 37, 666 P.2d 351 (1983); RAP 2.5. But if an issue raised for the first time on appeal is "arguably related" to issues raised in the trial court, a court may exercise its discretion to consider newly-articulated theories for the first time on appeal. See State Farm Mut. Auto. Ins. Co. v. Amirpanahi, 50 Wash.App. 869, 751 P.2d 329 (1988).
¶ 8 As noted above, Saberhagen first raised the issue of retroactive application of § 402A in the appeal of Lunsford I. There, Saberhagen argued that
[w]hile § 402A was eventually adopted and applied to manufacturers . . . in the 1969 Ulmer decision, and was applied to product sellers . . . in the 1975 Tabert decision, it would be fundamentally unfair to Saberhagen to retroactively impose upon its business activities and conduct in 1958 duties and liabilities that did not exist yet and would not come into existence for another 17 years.
¶ 9 On remand, Saberhagen argued that "[b]ecause § 402A was not the law of Washington in 1958, and because there was no other applicable theory of strict liability at that time, as a matter of law Saberhagen cannot be held liable to plaintiffs under a strict liability theory." Lunsford, characterizing Saberhagen's argument as a "retroactivity" argument, countered that "[i]n recognition of these long-standing rules, the courts of this State have frequently, without caveat, applied strict liability to asbestos actions in which the plaintiff's exposure occurred prior to the publication of Restatement § 402A." Lunsford goes on to list five cases in which plaintiffs recovered on theories of strict product liability for asbestos exposure occurring at least in part before 1958. Finally, in the summary judgment hearing, Lunsford's counsel argued "[b]ut the fact is those exposures occurred prior to the adoption of either one [Ulmer or Tabert] in '68 or in '75. And by implication, the court of appeals has consistently applied strict liability to those exposures that have occurred prior."
¶ 10 Saberhagen's objection is not well taken. Saberhagen asserts that strict liability should not be applied to exposures occurring before the adoption of § 402A in Ulmer and Tabert. This is a question of prospective versus retroactive application. Lunsford recognized Saberhagen's argument for what it was and responded. The issue of retroactive application of § 402A is properly before us.
III. Adoption of Strict Liability for Product Defects
¶ 11 The Washington Product Liability Act (WPLA) does not govern Lunsford's claim because he was exposed to asbestos before its adoption. Mavroudis v. Pittsburgh-Corning Corp., 86 Wash.App. 22, 33-34, 935 P.2d 684 (1997) (a cause of action "arises" when the plaintiff was exposed to asbestos, not when he discovered his injury); Koker v. Armstrong Cork, Inc., 60 Wash.App. 466, 472, 804 P.2d 659 (1991) (applying the law in effect prior to the WPLA because the plaintiff's claim arose prior to that act).
*1092 ¶ 12 The parties disagree as to whether Restatement (Second) of Torts § 402A (1965) retroactively applies to Lunsford's claim. Section 402A reads:
Special Liability of Seller of Product for Physical Harm to User or Consumer
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
¶ 13 In 1969, the Washington Supreme Court, after extensive review of product liability cases beginning in 1913, adopted the strict liability contained in § 402A as the law of this jurisdiction. Ulmer, 75 Wash.2d 522, 531-32, 452 P.2d 729. That decision applied only to the liability of manufacturers.
¶ 14 In 1975, the Washington Supreme Court after further review of product liability cases, extended § 402A strict liability to those in the business of selling or distributing a product. Tabert, 86 Wash.2d 145, 148-49, 542 P.2d 774. Both Ulmer and Tabert were remanded for trial with instructions to apply the strict liability rules announced in the appellate decision. Ulmer, 75 Wash.2d at 532, 452 P.2d 729; Tabert, 86 Wash.2d at 155-56, 542 P.2d 774.
¶ 15 Numerous appellate decisions have applied strict liability to claims arising from exposures to asbestos that occurred before the adoption of § 402A. See e.g. Mavroudis, 86 Wash.App. at 22, 935 P.2d 684 (upholding a jury verdict finding strict liability under pre-WPLA law based on inadequate warnings of exposure occurring between 1957 and 1963); Van Hout v. Celotex Corp., 121 Wash.2d 697, 853 P.2d 908 (1993) (holding that under pre-WPLA law, strict liability should have been applied for exposure occurring between 1946 and 1980); Krivanek v. Fibreboard Corp., 72 Wash.App. 632-33, 865 P.2d 527 (1993) (upholding a jury verdict based on pre-WPLA strict liability standards for exposure occurring between 1953 and 1986); Falk v. Keene Corp., 113 Wash.2d 645, 782 P.2d 974 (1989) (holding that the WPLA did not change the standard to negligence  it remained strict liability as explained in § 402A and as adopted by Ulmer and Tabert  and remanding for application of strict liability to claims arising from exposure between 1947 and 1953); Lockwood v. AC & S, Inc., 109 Wash.2d 235, 744 P.2d 605 (1987) (upholding a jury verdict finding AC & S strictly liable for exposure to asbestos occurring between 1942 and 1972). In none of these cases did the court limit the application to the specific facts of each situation.
IV. Retroactive Application
¶ 16 Saberhagen argues that the adoption of § 402A by Ulmer and Tabert was a new rule and is therefore subject to a three-part analysis under Chevron Oil to determine whether it should apply retroactively. Since none of the Washington cases previously applied the Chevron Oil test and squarely addressed the issue, Saberhagen argues the test should be applied here. Under Saberhagen's analysis, the adoption of § 402A should not apply retroactively to Lunsford's exposure.
¶ 17 The United States Supreme Court in 1971 announced a three-prong test to determine whether a new federal rule of law in a civil case would be applied purely prospectively, selectively prospectively, or retroactively:
First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed.
Second, it has been stressed that we must . . . weigh the merits and demerits in each *1093 case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.
Finally, we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.
Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (internal citations and quotation omitted). This is the test Saberhagen invokes. However, the United States Supreme Court has long ago limited the use of the Chevron Oil analysis by rejecting selectively prospective application of new decisional law. James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (holding that it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so, "principles of equality and stare decisis here prevailing over any claim based on a Chevron Oil analysis"). Beam Distilling, 501 U.S. at 540, 111 S.Ct. 2439. Prior to Beam Distilling, courts had three choices in civil matters: pure prospectivity, selective prospectivity, and pure retroactivity. The "purely prospective method of overruling" occurs when "a new rule is [not] applied . . . to the parties in the law-making decision . . . [t]he case is decided under the old law but becomes a vehicle for announcing the new, effective with respect to all conduct occurring after the date of that decision." Beam Distilling Co., 501 U.S. at 536, 111 S.Ct. 2439. Selective prospectivity allowed retroactive application of a newly decided rule to some litigants but not others, based on the equities of the case. Beam Distilling, 501 U.S. at 540-43, 111 S.Ct. 2439. Pure retroactive application requires that once a rule is applied to the parties before the court it is applied to all:

Once retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. The applicability of rules of law is not to be switched on and off according to individual hardship; allowing relitigation of choice-of-law issues would only compound the challenge to the stabilizing purpose of precedent posed in the first instance by the very development of "new" rules.
Beam Distilling, 501 U.S. at 543, 111 S.Ct. 2439. Once rung, the bell is not unrung.
¶ 18 To the extent this court finds strict liability applicable to asbestos claims, Saberhagen seeks purely prospective application of any new rule, or selective prospective application of any existing rule. But after Beam Distilling, courts are left with only two choices: purely prospective application of a new principle or rule of law overruling past precedent or deciding an issue of first impression, or purely retroactive application of such a principle or rule of law.
¶ 19 The Washington Supreme Court first applied Chevron Oil in Taskett v. KING Broad. Co., 86 Wash.2d 439, 448, 546 P.2d 81 (1976). This was to determine whether a new state rule, announced in that case, should be applied retroactively. But in 1992 in Robinson v. City of Seattle, the court rejected the Chevron Oil test. 119 Wash.2d 34, 830 P.2d 318 (1992). Finding that "[t]he practice of retroactive application is `overwhelmingly the norm'" the Robinson court adopted Beam Distilling's rejection of selective prospectivity.[1]Id., at 79, 830 P.2d 318.
*1094 ¶ 20 When a Washington appellate decision applies a rule announced in that decision retroactively to the parties in that case, the rule will also be applied to all litigants not barred by a procedural rule. Id., at 80, 830 P.2d 318. "To apply an appellate decision `retroactively' means to apply its holding to causes of action which arose prior to the announcement of the decision." Id., at 71, 830 P.2d 318 (emphasis added). "[T]here is no balancing the equities to determine whether we should now apply rules which were applied retroactively" in the previous decisions. Id., at 80, 830 P.2d 318. Litigants are not
to be distinguished for choice-of-law purposes on the particular equities of their claims to prospectivity: whether they actually relied on the old rule and how they would suffer from retroactive application of the new. It is simply in the nature of precedent, as a necessary component of any system that aspires to fairness and equality, that the substantive law will not shift and spring on such a basis.
Id., at 80, 830 P.2d 318. (quoting Beam Distilling, 501 U.S. at 543, 111 S.Ct. 2439). Consequently, the Robinson court upheld retroactivity as sound and abolished the selective prospectivity analysis in the application of state appellate decisions. Id. Two options are available to a court when adopting a new rule: pure prospective application and retroactive application. Applying the new rule in the case before it necessarily invokes retroactivity.
V. Strict Product Liability Applies to Lunsford
¶ 21 Because Ulmer and Tabert adopted § 402A strict product liability, and Mavroudis, Van Hout, Krivanek, Falk and Lockwood all applied the theory to claims regarding exposure to asbestos to the parties before the court, Robinson requires that strict product liability apply to Lunsford. It does not matter that none of those courts applied the Chevron Oil test; the issue of retroactivity is already resolved with respect to asbestos exposure claims.
¶ 22 Even if it applied, the Chevron Oil test required the announcement of a new rule in those cases, not application of an existing rule. In this case the question is whether the rule of strict liability for asbestos exposure applied in Mavroudis, Van Hout, Krivanek, Falk and Lockwood may be applied to Lunsford. This is a question of application of an existing rule to a new fact pattern, rather than an announcement of a new rule. Neither selective prospective application nor purely prospective application of strict liability is available to Saberhagen.
VI. Robinson is Not Overruled Sub Silentio
¶ 23 Saberhagen argues that the Robinson retroactivity rule has been overruled sub silentio by two recent cases from the Washington Supreme Court: In re the Det. of Audett, 158 Wash.2d 712, 147 P.3d 982, 986-87 (2006) and State v. Atsbeha, 142 Wash.2d 904, 916-17, 16 P.3d 626 (2001). In these cases, the Supreme Court used the analysis from Chevron Oil to determine whether previously announced "new" rules were appropriately applied to the defendants in Audett and Atsbeha. Saberhagen contends that because the Washington Supreme Court used the Chevron Oil analysis, Robinson's retroactivity rule has been overruled sub silentio.
¶ 24 We do not agree. The Washington Supreme Court "will not overrule such binding precedent sub silentio." State v. Studd, 137 Wash.2d 533, 548, 973 P.2d 1049 (1999). While use of Chevron Oil is contrary to Robinson, we note no one asked the court to overrule Robinson in either case. In fact, no party cited either Chevron Oil or Robinson to the court. A close look at the cases shows that the interjection of Chevron Oil was erroneous.
¶ 25 Atsbeha, a criminal case, involved the application of a change in the law of evidence *1095 announced in State v. Ellis, 136 Wash.2d 498, 963 P.2d 843 (1998). The Chevron Oil test by its own terms only applies in a case in which a new rule is being adopted, not when a relatively new rule from another decision is being applied. Further, while the Washington Supreme Court cited to its earlier decision in Digital Equip. Corp. v. Dept. of Revenue for the elements of the Chevron Oil test, the next paragraph of that decision cites Robinson for the proposition that the precedential weight of Chevron Oil had been called into question by recent United States Supreme Court decisions. 129 Wash.2d 177, 184, 916 P.2d 933 (1996). The Digital court concluded, "Chevron Oil no longer controls in this area." Id., at 188, 916 P.2d 933. Moreover, Chevron Oil was a test for application of a new rule adopted in a federal civil case, and has not been applied to application of a new rule adopted in a state criminal case. There was no precedent for use of Chevron Oil in this context.
¶ 26 However, under binding state precedent, the same result would have been reached. The United States Supreme Court has held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a `clear break' with the past." Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Washington courts have cited Griffith with approval: "A new rule announced by the state or federal Supreme Court applies to all cases pending direct review at the time the rule is announced." State v. Gamble, 118 Wash. App. 332, 335-36, 72 P.3d 1139 (2003) reversed in part on other grounds by 154 Wash.2d 457, 114 P.3d 646 (2005); see also In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 325-26, 823 P.2d 492 (1992). The rule announced in Ellis was applied to Ellis; under Griffith and St. Pierre, the rule should have retroactively applied to Atsbeha without reference to a Chevron Oil analysis.
¶ 27 While Griffith and St. Pierre should have been controlling precedent, neither case was cited in the briefing to Atsbeha. And, the parties did not ask that these cases be overruled in name or theory; nor did they cite Chevron Oil to the court as the test. Further, to the extent that the Rules of Evidence were at issue and could also apply in a civil context, Robinson would have been the controlling authority. However, it also was not cited by either party. This reinforces the conclusion that the court did not intend to overrule binding precedent sub silentio.
¶ 28 In Audett the Washington Supreme Court referred to the Chevron Oil analysis as instructive to determine whether to apply new civil commitment procedures from In re the Detention of Williams, 147 Wash.2d 476, 55 P.3d 597 (2002) overruled on other grounds by 117 Wash.App. 611, 72 P.3d 186 (2003). But, the Audett opinion was not purporting to adopt a new rule, which is the first requirement of the Chevron Oil test. Digital Equip., 129 Wash.2d at 184, 916 P.2d 933. Under Robinson, "once this court has applied a rule retroactively to the parties in the case announcing a new rule, we will apply the new rule to all others not barred by procedural requirements." Robinson, 119 Wash.2d at 77, 830 P.2d 318. The new rule had been announced and applied in Williams, therefore it applied to all subsequent litigants including, Audett. While the Audett court reached the result required by Robinson, the reference to Chevron Oil is at odds with Robinson and Digital Equip. The parties did not ask the court to overrule Robinson or Digital; they did not even cite Robinson, Digital or Chevron Oil to the court. Further, the Audett opinion does not mention Beam, Robinson or Digital all of which disavow Chevron Oil. We conclude that the court was not asked to and did not intend to overrule Robinson sub silentio.
¶ 29 In sum, a Chevron Oil analysis is not appropriate in this case. Robinson is a clear and binding statement of the rule of retroactivity in civil cases. We conclude that it is still good law. Because the rule of strict product liability adopted in Ulmer and Tabert was applied to the litigants in subsequent *1096 asbestos exposure cases, it applies retroactively to all subsequent litigants not barred by procedural requirements. This includes litigants, like Lunsford, exposed to asbestos prior to Washington's adoption of § 402A of the Restatement of Torts.
VII. Admissibility of American Law Institute (ALI) Documents
¶ 30 We find that the trial court was correct when it denied Lunsford's motion to strike documents describing the proceedings of the ALI as inadmissible hearsay. Evidence Rule (ER) 803(a)(16) provides a hearsay exception for "[s]tatements in a document in existence 20 years or more whose authenticity is established." ER 901(b)(8) and 902(e) provide for authentication of ancient documents. The reasons for this exception were explained in Bowers v. Fibreboard Corp., 66 Wash.App. 454, 461-63, 832 P.2d 523 (1992), rev. denied, 120 Wash.2d 1017, 844 P.2d 436 (1992). They do not bear repeating. The ALI documents recorded proceedings from 1958, 1961 and 1964. They have been in existence for more than 20 years. They are authenticated as official publications under 902(e). The documents meet the hearsay exception under ER 803(a)(16).
¶ 31 We reverse and remand.
WE CONCUR: DWYER, J., and SCHINDLER, A.C.J.
NOTES
[1] In explaining its choice to abolish selective prospectivity of state appellate decisions, the Robinson court relied heavily on the reasoning in Beam Distilling:

"The plurality in Beam Distilling holds that selective prospectivity is not available in the civil context. The opinion concludes that once the Supreme Court has applied a rule of law to the litigants in one case, it must do so with respect to all others not barred by procedural requirements or res judicata[.]"
Robinson, 119 Wash.2d at 75, 830 P.2d 318 (citing Beam Distilling, 501 U.S. at 543-44, 111 S.Ct. 2439) (other citations omitted).
"`To this extent, our decision here does limit the possible applications of the Chevron Oil analysis, however irrelevant Chevron Oil may otherwise be to this case. Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the Chevron Oil test cannot determine the choice of law by relying on the equities of the particular case. . . . '"
Robinson, 119 Wash.2d at 76, 830 P.2d 318, (quoting Beam Distilling, 501 U.S. at 543, 111 S.Ct. 2439) (other citations omitted).