Marguerite **WYLER** and Max Wyler, wife and husband, Plaintiff(s),

v.

**HOLLAND AMERICA LINE—USA, INC.,** a Washington corporation, Holland America Line—Westours, Inc., a Washington, Holland America Line, A Netherlands Antilles corporation; and Hal Antillen N.V., a Netherlands Antilles corporation, Defendants.

No. C02–0109P.

United States District Court, W.D. Washington, At Seattle.

June 3, 2003.

---

John Patrick Hayes, Forsberg & Umlauf, Seattle, WA, for Hal Antillen N/V, Holland America Line NV, Holland America Line USA Inc., Holland America Line Westours Inc., Defendants.

Patrick Gaynor Middleton, Forsberg & Umlauf, Seattle, WA, for Hal Antillen N/V, Holland America Line NV, Holland America Line USA Inc., Holland America Line Westours Inc., Defendants.

Wayne Mitchell, Forsberg & Umlauf, Seattle, WA, for Hal Antillen N/V, Holland America Line NV, Holland America Line USA Inc., Holland America Line Westours Inc., Defendants.

Charles P Moure, Harris & Moure PLLC, Seattle, WA, for Marguerite Wyler, Max Wyler, Plaintiffs.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PECHMAN, District Judge.

This matter comes before the Court on defendant Holland–America Line USA, Inc.'s motion for summary judgment. (Dkt. No. 55.) The co-defendants join in the motion. Plaintiff Marguerite Wyler moves for partial summary judgment on the defendants' "rogue wave" affirmative defense. (Dkt. No. 58.) Having considered the papers and pleadings, the Court hereby DENIES defendants' motion because the plaintiff has adduced sufficient evidence to support a claim of negligence, and there are outstanding issues of material fact regarding whether the large wave that caused the ZAANDAM to lurch was foreseeable. The Court also DENIES plaintiff's motion because the defendants' use of the term "rogue wave" did not restrict itself to the U.S. Navy definition.

## BACKGROUND

On the morning of May 2, 2001, between 8:39 a.m. and 8:43 a.m., a large wave struck the ZAANDAM, a 780′ luxury cruise ship owned and operated by the defendants Holland–America Line—USA, Inc. et al ("Holland America"). When the wave struck, it caused the ship to lurch, throwing the plaintiff from her chair and injuring her.

En route to San Francisco, the ZAANDAM had encountered inclement weather after leaving San Diego on April 30. It is undisputed that the weather deteriorated throughout May 1 and 2, with the wind increasing to 47 knots (Beaufort Scale 9), and by midnight reaching 48 to 55 knots (Beaufort Scale 10). The gale force winds resulted in "high to very high" seas (25–40 feet) according to the ship's log. By the early morning of May 2, ZAANDAM Captain van Coevorden learned from Captain Dellsta, Holland America's Director of Nautical Operations, that the weather was better closer to the California coast. Timmers Decl. ¶ 8. Having decided to return toward the coast, Captain van Coevorden initiated a turn that occurred in two stages. Beginning at 7:30 a.m., he first turned the vessel 160 south-southeast, which allowed the ship to reballast from the starboard to portside tanks. Before the reballasting was complete, Captain van Coevorden left the bridge to prepare an announcement that the passengers anticipate a late arrival in San Francisco on May 3. Chief Officer Timmers was left on the bridge to complete the turn toward the coast. It is in dispute whether Captain van Coevorden returned to the bridge before the time of the plaintiff's injury. Officer Timmers initiated the second stage of the turn. At 8:27 a.m. he began turning the vessel from 160 to 055 . Officer Timmers and Captain van Coevorden envisioned no problems making this course

change because they had safely sailed through the night. Van Coevorden Dep. at 143.

Officer Timmers claims that as the vessel crested a wave, he spotted an oncoming wave with "an unusually deep trough" that was approximately 50%—70% percent larger than the prevailing seas. Timmers Decl. ¶ 12. The defendants note that at 8:42 a.m. the course recorder registered the effect of a large wave. Plaintiff disputes this reading of the course recorder. Although the seas were generally rough, evidence shows a particularly large wave hit the ZAANDAM at about this time.

Ms. Wyler alleges that vessel motion, and not a single "rogue" wave, threw her from her chair during the second turn. Plaintiff further alleges that the ship's command should have known such a turn would be hazardous in Beaufort 10 conditions. The plaintiff claims that the ship's command should not have initiated the turn without giving the passengers a warning. Defendants counter that the wave that struck the ZAANDAM was an inordinately large, *i.e.* "rogue wave," that could not have been reasonably foreseen, and hence there was no duty to warn.

## ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) provides, in pertinent part, that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c) (2002). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. While "some alleged factual dispute between the parties will not defeat" a motion for summary judgment, "disputes over facts that might affect the outcome of the suit … will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

 Summary judgment is rarely granted in maritime negligence cases because the issue of whether a defendant acted reasonably is ordinarily a question for the trier of fact. *Christensen v. Georgia–Pacific Corp.*, 279 F.3d 807 (9th Cir. 2002). In negligence cases, questions concerning foreseeability and causation particularly lend themselves to decision by a jury. *See Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978).

### B. Issue of foreseeability

While the seas were generally rough on May 1 and 2, the defendants assert that the ZAANDAM had sailed smoothly through the night despite the Beaufort 10 reading. The defendants argue that there were thus no grounds to have reasonably foreseen the "rogue wave" that allegedly caused the ZAANDAM to lurch at approximately 8:42 a.m. on May 2. The plaintiff counters that Holland America owed its passengers a heightened level of care be-

cause of the Beaufort 10 level of wind and seas.

■ "A vessel operator owes passengers and visitors aboard its vessel a duty of reasonable care under the circumstances ... to warn them of any dangers of which he knows or should know." *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The duty to warn requires a warning only of harm that is reasonably foreseeable. *Casaceli v. Martech Internat'l, Inc.,* 774 F.2d 1322 (5th Cir.1985).

■ Determinations of foreseeable risk are questions of fact for the jury. *See Christensen,* 279 F.3d at 813. The defendants fail to demonstrate that in the light most favorable to the plaintiff there are no genuine issues as to material facts with respect to foreseeability. Simply because the ZAANDAM had sailed throughout the night without incident did not necessarily mean the future was clear of foreseeable hazards. The ship's command had a duty to reasonably foresee any risks that might ordinarily attend the circumstances at the time; *i.e.,* a Beaufort 10 reading, the timing of the turn, the hour when passengers would be awake. Thus an intensive fact inquiry is necessary to gauge what a reasonable course of action would have been in the circumstances of May 1 and 2. Under *Christensen,* this Court cannot determine as a matter of law which attendant dangers were reasonably foreseeable.

### C. Issue of causation

■ Even if the risk to Ms. Wyler was foreseeable and a duty to warn obtained, the defendants question whether a warning would have been effective in preventing her injury. It is conceded that plaintiff's expert witness, Captain Andrew King, suggested an adequate warning should have included an instruction to sit down during the May 2 turning maneuver. *See* King Dep. at 182. Because Ms. Wyler

was sitting down during the lurch, the defendants claim that the failure to warn could not have proximately caused her injury. Plaintiff nonetheless maintains that she might have sat in an anchored chair if the warning had been issued. Pl. Opp. to Sum. Jud. at 22.

When determining whether the failure to warn caused an injury, the jury must reach that conclusion based on the experience of the community, "the court may seldom rule on [cause] as a matter of law." *See* RESTATEMENT (SECOND) OF TORTS, § 433B cmt.b. If the jury determines that the rough seas justified a warning, the duty existed independently of how the passengers reacted. At the summary judgment stage, the defendant cannot speculate how the plaintiff would have responded to a warning. With the facts most favorable to the non-moving plaintiff, the Court likewise cannot ascertain as a matter of law whether a warning would have prevented the injury.

### D. Sufficiency of plaintiff's evidence

■ In moving for summary judgment, Holland America asserts that the plaintiff impermissibly attempts to substantiate speculation through expert testimony. The nonmoving party cannot rely on speculation or conjecture in meeting its burden of production. *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978). As discussed above, the plaintiff takes issue with the central material fact of the severe weather and its consequent risks. As evidence, the plaintiff cites various notations in the ship's log and comments by ZAANDAM officers that the prevailing seas were between 25–41 feet. Plaintiff also observes that the defendants noted no "rogue wave" in any records of the morning of May 2 (Pl. Opp. at 14), and that the defendants' expert, Captain Burton, admitted that he would have expected

a log entry if a "rogue wave" had occurred. *Id.*, Moure Decl. Exh. A at 166–167. Therefore, the evidence of severe weather is not merely speculative.

■ The defendants also argue the plaintiff's expert, Captain Andrew King, is not qualified to render an expert opinion in this case. The trial judge must determine whether expert testimony has "a reliable basis in the knowledge and the experience of [the relevant] discipline." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Even if an expert is generally qualified, under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 154, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the court must determine the reasonableness of applying expert opinion to draw conclusions about the specific matter to which the expert testimony is directed.

■ The defendants discredit Captain King, claiming that he is not qualified to assess the foreseeable dangers in the weather conditions of May 1 and 2 with respect to a modern 780′ cruise liner like the ZAANDAM. The plaintiff maintains that Captain King is qualified because he maintains a Master's License; served as Chief Officer on a ocean-going cruise ship (approximately 500′ long), performed accident survey work for cruise line industry; and investigated many shipboard injuries for insurance companies, many of which involved heavy weather. Pl. Opp. at 23.

The defendants' skepticism in regard to Captain King's qualifications properly concerns only the weight of his testimony, not its admissibility. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 ("[A]t the summary judgment stage the judge's function is not ... to weigh the evidence ... but to determine whether there is a genuine issue for trial.") The defendants have not posited what background would be required of a qualified expert, except to suggest that such an expert might have direct experience on a modern vessel the size of the ZAANDAM. As a matter of law, this basis is too narrow to disqualify plaintiff's expert testimony as unreasonable under *Kumho Tire*. Therefore, the plaintiff has adduced sufficient evidence to maintain her negligence claim.

### E. The "rogue wave" defense

Plaintiff moves for partial summary judgment to exclude the defendants' use of the "rogue wave" as an act of God defense. Since the existence of a rogue wave was not technically possible pursuant to the U.S. Navy definition,[1] the plaintiff reasons that the affirmative defense must be dismissed as matter of law. Defendants respond first that Holland America never used the term pursuant to the Navy's definition. Second, defendants argue that it is not necessary for an unusually large wave to be "rogue" under the Navy's definition for a party to invoke it as an act of God defense.

■ Phrases such as "rogue wave," "freak wave," "sneaker," etc. are synonyms for "an act of God." An "act of God" is a natural phenomenon of "such unanticipated force and severity as would fairly preclude charging the carrier with responsibility for damage occasioned by its failure to guard against it." *Compania De Vapores Insco, S.A. v. Missouri Pac. Railroad Co.*, 232 F.2d 657, 660 (5th Cir.1956). Hence the "rogue wave" defense is simply an alternative formulation of the argument that the inordinate size of the wave that struck the ZAANDAM was unforeseeable.

---

1. The U.S. Navy defines a "rogue wave" is 2 2 × the upper 33% height of the prevailing seas. If the prevailing seas were 25–41 feet in Beaufort 10 conditions, the plaintiff calculates the rogue wave would have to have reached at least 65 feet.

There is no indication in the record that the defendants relied on the Navy's definition, or that this definition is a predicate for invoking their act of God defense in reference to an unusually large wave. Therefore, the Court does not exclude the defendants' affirmative defense as a matter of law. The issue of the "rogue wave" is one of foreseeability and best subsumed in the jury's assessment of the reasonableness of the ship command's actions.

## CONCLUSION

This case hinges primarily on the question of whether severe weather conditions of May 1 and 2 created foreseeable risks to the passengers of the ZAANDAM. To survive summary judgment, the plaintiff has adduced sufficient concrete evidence of these conditions, bolstered by admissible expert testimony. The trier of fact must consider all the questions of fact to determine whether the wave causing the lurch that injured the plaintiff was foreseeable, whether the ship's command reasonably turned the vessel without giving a warning, and whether the failure to warn proximately caused the injury. The issue of the "rogue wave" defense must be subsumed in the trier of fact's inquiry into foreseeability. It is inappropriate for the Court to resolve any of these questions as a matter of law. Therefore, the Court DENIES BOTH the defendants' motion for summary judgment and the plaintiff's motion for partial summary judgment regarding the affirmative defense.

The clerk is directed to provide copies of this order to all counsel of record.