# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEBBIE K. BALTAZAR, | ) | No. 73639-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DONALD PARADISE and "JANE DOE" | ) | |
| PARADISE, husband and wife, | ) | |
| | ) | FILED: December 14, 2015 |
| Respondents. | ) | |
| | ) | |

LEACH, J. — Debbie Baltazar appeals the trial court's judgment entered on a jury verdict in favor of defendant Dr. Donald Paradise. Baltazar challenges the trial court's jury instructions on the emergency doctrine, the act of God defense, and contributory negligence, claiming that the evidence does not support giving any of these instructions. Because we agree, we reverse and remand for a new trial.

## FACTS

On August 23, 2008, Dr. Donald Paradise operated a boat occupied by his employees during a staff outing on Puget Sound. Baltazar rode in the front of the boat. During mild weather conditions, the boat hit a wave or several waves between two and three feet high. On impact, Baltazar and others in the bow of the boat flew into the air and hit the boat several times. Baltazar suffered injuries

as a result. Baltazar sued Paradise, alleging that his negligent operation of the boat caused her injuries.

At trial, Paradise requested instructions on several affirmative defenses, including the emergency doctrine, the act of God defense, and Baltazar's contributory negligence. Over Baltazar's objection, the trial court gave the jury each instruction.

After the jury found for Paradise, the trial court entered judgment. Baltazar appeals.

## STANDARD OF REVIEW

We review de novo a challenge to a jury instruction based on a matter of law and review for abuse of discretion a challenge based on a matter of fact.[1] A court sufficiently instructs a jury when its instructions allow each party to argue its theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.[2] We review a trial court's decision to give an emergency instruction for abuse of discretion because that decision involves determining if the record contains the kind of facts to which the doctrine applies.[3]

---

[1] Kappelman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009).
[2] Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 194, 668 P.2d 571 (1983).
[3] Kappelman, 167 Wn.2d at 6.

ANALYSIS

Before we consider Baltazar's jury instruction challenges, we address Paradise's contention that Baltazar's failure to assign error to the jury verdict prevents her from challenging the trial court's jury instructions. Paradise claims that because of this omission, Baltazar has accepted the jury's factual determination, reflected by its verdict, that Paradise was not negligent. We disagree.

Paradise cites Fowles v. Sweeney[4] and RAP 10.3(g) to support his argument. In Fowles, the Supreme Court considered an appeal from a bench trial and treated as established facts the trial court findings of fact that the appellant had not identified by number and description as required by former RAP 43.[5] Because this rule only applied to cases tried to the court without a jury, it provides no authority for Paradise's position.

Paradise's reliance on RAP 10.3(g) fails to account for RAP 10.3(a)(4), which provides,

> *Assignments of Error.* A separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error.

RAP 10.3(g) must be read in the context of the general rule for assignments of error set forth in RAP 10.3(a)(4). RAP 10.3(a)(4) requires a separate assignment

---

[4] 41 Wn.2d 182, 248 P.2d 400 (1952).
[5] Fowles, 41 Wn.2d at 187.

only for errors "made by the trial court," not an error made by a jury. RAP 10.3(g)'s provisions relate to trial court findings of fact made after a bench trial. This construction of RAP 10.3(g) is consistent with the earlier appellate procedural rules and Fowles v. Sweeney.

Additionally, RAP 10.3(g) allows review of an unchallenged finding of fact when a brief clearly discloses the associated issue in the statement of issues. Paradise makes no claim that Baltazar's brief inadequately discloses any issue. Baltazar's opening brief makes clear the nature and extent of her appeal: she appeals the trial court's jury instructions in a personal injury trial that she asserts resulted in an erroneous defense jury verdict. She argued all issues in her briefing, and she assigned error to the particular jury instructions she appealed.

Also, this court liberally construes the appellate rules to promote justice and facilitate the decision of cases on the merits.[6] Thus, we turn to the merits of the case.

Baltazar first asserts that the trial court abused its discretion by giving an "emergency doctrine" instruction because Paradise did not produce sufficient evidence for the doctrine to apply. Paradise disagrees, claiming he provided

---

[6] RAP 1.2(a).

-4-

evidence of a sudden emergency with evidence that upon seeing a three-foot wave, he chose to decelerate and warn his passengers.

The trial court gave the following emergency doctrine instruction:

### INSTRUCTION NO. 16

A person who is suddenly confronted by an emergency through no negligence of his or her own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though it is not the wisest choice.

A court reviews jury instructions as a whole.[7] The sudden emergency doctrine recognizes that a person placed in a position of danger does not always act as prudently as one might with time for deliberation.[8] This doctrine applies only in limited circumstances and requires "'the availability of and a possible choice between courses of action after the peril arises. Otherwise, the doctrine blends into or merges with the theory of unavoidable accident.'"[9] The doctrine protects from liability a defendant suddenly confronted by an emergency through no fault of his own who chooses an otherwise negligent course of action to avoid the emergency.[10]

---

[7] Kappelman, 167 Wn.2d at 9 (citing Brown, 100 Wn.2d at 194).

[8] Kappelman, 167 Wn.2d at 9.

[9] Kappelman, 167 Wn.2d at 10 (quoting Seholm v. Hamilton, 69 Wn.2d 604, 609, 419 P.2d 328 (1966)).

[10] Kappelman, 167 Wn.2d at 10; see Hinkel v. Weyerhaeuser Co., 6 Wn. App. 548, 554, 494 P.2d 1008 (1972).

A court should give an emergency doctrine instruction only when the party invoking the doctrine presents the jury with evidence that the emergency arose through no fault of that party and that the party had to choose quickly between two courses of action.[11] Evidence of unavoidability alone cannot support an emergency instruction.[12]

Baltazar contends that the doctrine does not apply here because Paradise was negligent in his actions leading up to the perilous situation, not in his reaction to it. She asserts that Paradise created the perilous situation by failing to maintain a proper lookout and thus failing to see the oncoming wave and properly navigate the boat. She also claims that the instantaneous nature of the event left Paradise without time to choose between two courses of action.

Paradise admitted the instantaneous nature of the incident:

> [Paradise's counsel]:  How have you described it before as far as how much time existed?  What words would you use to describe how fast this happened?
>
> Dr. Paradise:  Well, I think that I remember that my final thought about it is it was instantaneous.  That's about as much—it wasn't one thousand one, one thousand two, one thousand three. I'm saying this and it's instantaneous and I'm on the wave."

---

[11] Zook v. Baier, 9 Wn. App. 708, 713, 514 P.2d 923 (1973); Stolz v. McKowen, 14 Wn. App. 808, 811, 545 P.2d 584 (1976).

[12] Stolz, 14 Wn. App. at 811.

Because the claimed emergency provided Paradise with no alternative courses of action, Baltazar urges this court to follow Zook v. Baier[13] and Brown v. Spokane County Fire Protection District No. 1,[14] where courts dealt with similar facts. In Zook, the defendant struck the plaintiff as she walked through the snow to a gas station on a dark morning.[15] The defendant testified that he was traveling at 20 miles per hour, saw the plaintiff when she was 35 feet from him, applied his brakes, and tried to turn away but slid into her.[16] This court held that the emergency doctrine did not apply for two reasons—one relevant to our case—the driver had no available alternatives, "only an instant of time on a slippery road for a single instinctive reaction."[17] And in Brown, a driver suddenly confronted with a fire engine reacted instinctively by swerving to strike the fire engine a glancing blow rather than hitting it head on.[18] The Supreme Court, quoting Zook, held that the emergency doctrine did not apply under the evidence presented because the driver had no alternative to striking the fire engine.[19] Similar to the drivers in those cases who only had an instant to react in a perilous

---

[13] 9 Wn. App. 708, 514 P.2d 923 (1973).
[14] 100 Wn.2d 188, 668 P.2d 571 (1983).
[15] Zook, 9 Wn. App. at 709-10.
[16] Zook, 9 Wn. App. at 710.
[17] Zook, 9 Wn. App. at 714.
[18] Brown, 100 Wn.2d at 189-92, 198.
[19] Brown, 100 Wn.2d at 197-98.

situation, Paradise also had only an instant to instinctively react to the wave. He had no alternative to striking it.

Paradise contends that the trial court correctly applied the doctrine because the parties presented conflicting evidence showing the underlying event arose either from negligence or unavoidable circumstances. He relies on Kappelman v. Lutz[20] to support his argument. Kappelman sought damages for injuries she sustained when Lutz drove them on a motorcycle at night and struck a deer.[21] The Supreme Court decided that an emergency existed and the doctrine applied because deer are "quick, erratic, and unpredictable; they may run to the road and then across, or suddenly freeze. The appearance of a deer on the road can happen suddenly—as it did here—and is rare enough that a driver might not reasonably anticipate its occurrence."[22] Kappelman made no argument that Lutz lacked alternative courses of action. Paradise argues that he found himself in a circumstance similar to that of the defendant and the deer in Kappelman.

But, as Baltazar notes, these facts are distinguishable from those in Kappelman. Unlike a deer darting into the roadway at night, neither common experience nor the record shows a three-foot wave on Puget Sound to be

---

[20] 167 Wn.2d 1, 217 P.3d 286 (2009).
[21] Kappelman, 167 Wn.2d at 4-5.
[22] Kappelman, 167 Wn.2d at 10.

-8-

similarly quick, erratic, and unpredictable enough that a boat captain would not reasonably anticipate it. And the defendant in <u>Kappelman</u> had several seconds between seeing the deer 50 feet away and impact to choose a course of action,[23] while Paradise testified that hitting the wave was "instantaneous."

Like the drivers in <u>Zook</u> and <u>Brown</u>, Paradise did not have alternatives, only time for a single instinctive reaction. Under these facts, the emergency doctrine does not apply. The trial court should not have given the jury an instruction about it.

But an erroneous instruction requires reversal only if it prejudices a party.[24] Here, the instruction prejudiced Baltazar because it allowed the jury to consider a defense that, if accepted, relieved the defendant of all liability.

Baltazar next contends that the trial court's act of God jury instruction misstated the law and misled the jury. To determine if a jury instruction misstates the law, a court first determines the applicable law and then looks to see if the jury instruction properly stated that law.[25] If it did not, the court looks to see if the instruction prejudiced the party challenging it.[26]

The trial court gave the following instruction to the jury:

---

[23] <u>Kappelman</u>, 167 Wn.2d at 4.
[24] <u>Anfinson v. FedEx Ground Package Sys., Inc.</u>, 174 Wn.2d 851, 860, 281 P.3d 289 (2012).
[25] <u>Anfinson</u>, 174 Wn.2d at 866.
[26] <u>Anfinson</u>, 174 Wn.2d at 866.

INSTRUCTION NO. 17
Phrases such as "rogue wave," "freak wave," and "sneaker" are synonyms for "an act of God." An "act of God" is a natural phenomenon of such unanticipated force and severity that it cannot be reasonably anticipated or guarded against by the exercise of ordinary care. If you find from the evidence that the defendant has proved by a preponderance of the evidence that an act of God was the sole proximate cause of the plaintiff's injuries and damages, then the plaintiff cannot recover.

Baltazar claims that the first sentence misstates the law. Paradise responds that the trial court properly relied on Wyler v. Holland America Line-USA, Inc.[27] to write the first sentence of the instruction. And he argues that the instruction still required the jury to determine if the wave was rogue because it had to resolve conflicting testimony from the two experts that testified about this issue.

All witnesses agreed that the wave in this case was two to three feet high and that the water was otherwise calm. Paradise's expert witness David Shoemaker testified that a rogue wave is one "typically 33 percent larger than any existing waves or surrounding waves at the current sea state at the time" and "comes on suddenly without notice." He also testified that the wave Paradise confronted was probably rogue despite the fact that it was only three feet high. But Craig Sylvester testified for Baltazar that a rogue wave is an "unusually large and unexpected wave." However, no witness testified that the wave in the accident met Sylvester's definition. Thus, because Paradise presented evidence that any wave 33 percent higher than the water surrounding it was a rogue wave,

---

[27] 348 F. Supp. 2d 1206, 1211 (W.D. Wash. 2003).

no matter the wave's size, and undisputed evidence established a three-foot wave surrounded by flat water met this definition, and because the trial court instructed the jury that a rogue wave was synonymous with an act of God, the court instructed the jury this wave was an act of God. The instruction left nothing for the jury to decide, such as whether the wave was a natural phenomenon of such unanticipated force and severity that Paradise could not have reasonably anticipated or guarded against it by the exercise of ordinary care.

The trial court's instruction misunderstood a sentence from Wyler, where a married couple sued a cruise line after Ms. Wyler was thrown from her chair and injured when the ship struck a wave.[28] The ship's log recorded that the ship had encountered inclement weather and very high seas.[29] While attempting to move to calmer water, the ship encountered a particularly large wave.[30] Wyler claimed that the ship and not the wave threw her, and the defendant responded that the wave was unforeseeable.[31]

The plaintiffs moved for partial summary judgment to exclude the cruise line's "rogue wave" defense on the basis that the defense failed to show the waves met the U.S. Navy's definition of "rogue wave"[32] or "2 2 x the upper 33%

---

[28] Wyler, 348 F. Supp. 2d at 1208.
[29] Wyler, 348 F. Supp. 2d at 1208.
[30] Wyler, 348 F. Supp. 2d at 1208-09.
[31] Wyler, 348 F. Supp. 2d at 1209.
[32] Wyler, 348 F. Supp. 2d at 1209-12.

height of the prevailing seas."[33] In other words, "If the prevailing seas were 25-41 feet in Beaufort 10 conditions, the plaintiff calculates the rogue wave would have to have reached at least 65 feet."[34] The trial court denied the motion, concluding that "[t]here is no indication in the record that the defendants relied on the Navy's definition, or that this definition is a predicate for invoking their act of God defense in reference to an unusually large wave."[35] After expressly disavowing this formula definition, the Wyler court stated that "[p]hrases such as 'rogue wave,' 'freak wave,' 'sneaker,' etc. are synonyms for 'an act of God.'"[36]

The Wyler court quoted Compania de Vaparos Insco, S.A. v. Missouri Pacific Railroad Co.,[37] where the Fifth Circuit defined "an act of God" as a natural phenomenon of "'such unanticipated force and severity as would fairly preclude charging the carrier with responsibility for damage occasioned by its failure to guard against it.'"[38] The Wyler court then concluded that the "rogue wave" defense amounted to a lack of foreseeability argument, a determination best left to the jury.[39] The trial court overlooked the Fifth Circuit's further explanation that a "decision in this type controversy should turn not upon technical,

---

[33] Wyler, 348 F. Supp. 2d at 1211 n.1.
[34] Wyler, 348 F. Supp. 2d at 1211 n.1.
[35] Wyler, 348 F. Supp. 2d at 1212.
[36] Wyler, 348 F. Supp. 2d at 1211.
[37] 232 F.2d 657, 660 (5th Cir. 1956).
[38] Wyler, 348 F. Supp. 2d at 1211 (quoting Campania, 232 F.2d at 660).
[39] Wyler, 348 F .Supp. 2d at 1212.

meteorological definitions, but upon the issue of whether the disturbance causing the damage, by whatever term it is described, is of such unanticipated force and severity as would fairly preclude charging a carrier with responsibility for damage."[40]

Thus, neither Wyler nor Compania endorses the definition of a rogue wave that Paradise's expert witness provided to the jury. Rather, both cases allow an act of God defense only if the rogue wave was unusually large and unforeseeable, consistent with Baltazar's expert's testimony.

Here, undisputed evidence showed a wave satisfied Paradise's expert's definition of "rogue wave." This definition examined only the wave's relative height and did not require any unanticipated force, severity, or foreseeability. The trial court instructed the jury that a wave meeting this definition was an act of God. It did not require the jury to decide the proper question: was the wave a natural phenomenon of such unanticipated force and severity that Paradise could not have reasonably anticipated or guarded against it by the exercise of ordinary care? The instruction misstated the law.

But Paradise argues that the instruction did not prejudice Baltazar because the jury found no negligence on the special verdict form and did not reach the issue of Paradise's act of God defense. We disagree. The court

---

[40] Compania, 232 F.2d at 660.

essentially instructed the jury that the wave was an act of God and an act of God is one that "cannot be reasonably anticipated or guarded against by the exercise of ordinary care." Thus, after telling the jury that the wave was an act of God, the court compounded this error by instructing the jury that Paradise's failure to anticipate or guard against an act of God was not negligence. This all but directed a jury finding of no negligence and certainly prejudiced Baltazar.

Finally, Baltazar asserts that the court should not have given an instruction on contributory negligence. The jury did not reach this issue. However, because the issue is likely to come up again on remand, we address it.[41]

The trial court instructed the jury:

INSTRUCTION NO. 18
Contributory negligence is negligence, on the part of a person claiming injury or damage, which is a proximate cause of the injury or damage claimed.

INSTRUCTION NO. 19
If you find contributory negligence, you must determine the degree of negligence, expressed as a percentage, attributable to the person claiming injury or damage. The court will furnish you a special verdict form for this purpose. Your answers to the questions in the special verdict form will furnish the basis by which the court will apportion damages, if any.

A defendant asserting this defense must establish by substantial evidence that the plaintiff was negligent as to her own care.[42] This requires showing that

_____

[41] See Joyce v. Dep't of Corr., 155 Wn.2d 306, 325, 119 P.3d 825 (2005); see also Allison v. Dep't of Labor & Indus., 66 Wn.2d 263, 265-66, 401 P.2d 982 (1965).

the plaintiff had a duty to exercise reasonable care, breached that duty, and that the breach actually and proximately caused the resulting harm.[43] Instructing the jury on a party's contributory negligence where no evidence of it exists constitutes error.[44]

Paradise argues that Baltazar negligently contributed to her own harm because she had been diagnosed with early osteoporosis, failed to inform Paradise of that diagnosis, and she wrapped a rope around her wrist on the boating trip and sat in the front of the boat. We look to see if Paradise proved by substantial evidence that Baltazar was negligent.

Baltazar developed osteoporosis and received her diagnosis in December of 2007. But no medical professional placed any limitations on her activity as a result of her diagnosis. When the trial court asked defense counsel what evidence counsel had that Baltazar was told to restrict her activities, counsel stated that she had none at that point. But counsel further stated that Paradise would testify that he would not have let Baltazar sit in the front of the boat if she had informed him of the osteoporosis. The trial court ultimately allowed the instruction because Baltazar did not move for summary judgment to preclude a contributory negligence defense and stated that

---

[42] Roberts v. Larsen, 71 Wn.2d 743, 744, 431 P.2d 166 (1967).
[43] Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013).
[44] Hughey v. Winthrop Motor Co., 61 Wn.2d 227, 229, 377 P.2d 640 (1963).

-15-

> if Dr. Paradise's testimony is different than[45] the offer of proof given by [defense counsel] as to where he would have had Ms. Baltazar sit had he been aware of her osteoporosis, that there has been sufficient evidence for the Court to instruct the jury as it relates to contributory negligence.

But even with Paradise's testimony that he would have changed seating arrangements to accommodate Baltazar's condition, Paradise produced no evidence that Baltazar had a duty to inform Paradise of her osteoporosis or that by not telling him she breached a duty to exercise reasonable care under the circumstances when no medical professional limited her physical activity.

Paradise also argues that Baltazar's holding of the rope on the boat warranted a contributory negligence instruction. He argues that evidence showed she suffered from carpal tunnel syndrome, she had corrective surgery, and her doctor related her injury to the rope she wrapped around her wrist during the accident. But showing that the rope caused the injury does not show that Baltazar breached her duty to exercise reasonable care when she held the rope.

Paradise thus does not identify any evidence showing that Baltazar breached her duty to exercise due care by wrapping the rope around her wrist. Indeed, "[t]he defendant should not diminish the consequences of his negligence

---

[45] Here, it is likely the trial court meant to say "the same as" rather than "different than."

-16-

by the failure of the plaintiff to anticipate the defendant's negligence in causing the accident itself."[46]

Because no evidence shows that Baltazar had a duty to inform Paradise of her diagnosis or that she breached a duty to ensure her own safety when she wrapped a rope around her wrist while riding in the boat, Paradise has shown no evidence that Baltazar negligently contributed to her own injuries. Thus, we conclude that the trial court should not have instructed the jury about Baltazar's alleged contributory negligence.

## CONCLUSION

Because the trial court improperly instructed the jury on the emergency doctrine and the act of God defense and in so doing prejudiced Baltazar, we reverse and remand for a new trial.

_Leach, J._

WE CONCUR:

_Trickey, J._          _Spearman, C.J._

---

[46] Amend v. Bell, 89 Wn.2d 124, 132, 570 P.2d 138 (1977).